**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**CHRISTINE THOMAS, on behalf of herself and all others similarly situated,**

Plaintiff,

v.

**LE VIAN CORP.,**

Defendant.

---

**Docket No.**

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, CHRISTINE THOMAS, ("Plaintiff" or "Ms. Thomas"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, LE VIAN CORP. ("LE VIAN" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-100 *et seq.*, arising from Defendant's failure to ensure that its ecommerce Website, www.levian.com, is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, CHRISTINE THOMAS, is a resident of Bronx County, New York. At the age of twelve, Ms. Thomas sustained severe bilateral ocular trauma that permanently and irreversibly damaged both eyes. As documented by her treating optometrist, Dr. Christopher R. Scheno, O.D., Ms. Thomas's resulting visual impairment is permanent and includes complete loss of vision in her right eye and severely compromised residual vision in her left eye. (See Ex. A –

Christine Thomas Medical Letter/Report, dated July 15, 2026.)

2. As a blind consumer, Ms. Thomas relies on screen-reading software, including NonVisual Desktop Access ("NVDA"), and keyboard-only navigation to browse websites, read product information, compare available merchandise, evaluate purchasing options, and complete online transactions. Screen-reading software converts digital content into synthesized speech or refreshable Braille, enabling blind users to navigate websites independently. For this technology to function, websites must be properly coded to provide meaningful alternative text for images, programmatically determinable labels for interactive controls, descriptive link text, logical heading structure, keyboard-accessible navigation, and properly implemented ARIA markup. When websites fail to incorporate these requirements, screen readers cannot accurately interpret or communicate the website's content, rendering portions of the site inaccessible to blind users.

3. Plaintiff brings this civil action against Defendant, LE VIAN CORP., which operates the Le Vian brand and Website, www.levian.com, through which consumers may browse jewelry, handbags, scarves, accessories, and other merchandise, obtain product information, and access purchasing and retailer options. The Website serves as LE VIAN's primary online presence and provides information concerning LE VIAN's physical retail location at 235 Great Neck Road, Great Neck, New York 11021. In addition, the Website directs consumers to retail locations throughout the United States where LE VIAN products are offered for sale, enabling customers to identify retailers through which they may view and purchase LE VIAN merchandise. Equal access to the Website is necessary for such consumers to independently obtain the same products and retail-location information made available to sighted users.

4. Defendant, LE VIAN CORP. ("Defendant" or "Le Vian"), operates the Le Vian

brand and the commercial website located at www.levian.com (the "Website"). Through the Website, Defendant presents Le Vian jewelry and other merchandise to consumers, provides detailed information concerning its products, and furnishes functionality through which consumers can locate retailers offering Le Vian merchandise.

5. Defendant's Website is integrally connected to access to Le Vian merchandise at physical retail establishments. Among other things, Le Vian's individual product pages expressly invite consumers to "find the closest Le Vian retailer" and provide location-based and ZIP-code functionality intended to furnish consumers with a list of nearby Le Vian retailers. Thus, consumers use the Website not merely to learn about Le Vian merchandise, but also to identify where particular Le Vian products may be available for purchase at physical retail establishments.

6. Plaintiff has a genuine interest in Le Vian's merchandise and desires to independently research Le Vian products, obtain information concerning their characteristics and pricing, determine where desired products may be obtained, and ultimately purchase merchandise that meets her preferences and needs.

7. In particular, Plaintiff desired two specific products offered and displayed through Defendant's Website: (a) Le Vian Earrings featuring Grape Amethyst®, Chocolate Diamonds®, and Nude Diamonds™ set in 14K Strawberry Gold®, Style No. U-TRFS 67; and (b) the Scarf - Blue Sapphire Butterflies, Style No. XSCSM1030BBL.

8. Defendant's own Website identifies the earrings as Style No. U-TRFS 67 and describes them as featuring Grape Amethyst™, Chocolate Diamonds®, Nude Diamonds™, and 14K Strawberry Gold®. The product page also displays pricing information and provides functionality for locating the closest Le Vian retailer.

9. Defendant likewise identifies the Blue Sapphire Butterflies scarf as Style No. XSCSM1030BBL. Its product page provides an MSRP and directs consumers to locate the closest Le Vian retailer by enabling location services or entering a ZIP code.

10. Plaintiff attempted to access and use Defendant's Website on September 1, 2026, September 15, 2026, and October 1, 2026, including for the purpose of researching the foregoing products and accessing the information and functionality necessary to evaluate the products and determine how and where they could be obtained.

11. During Plaintiff's visits to the Website, www.levian.com however, she encountered accessibility barriers that interfered with her ability to independently navigate and understand Website content using NVDA and prevented her from obtaining the same product and retail-access information made available visually to sighted consumers.

12. These barriers were particularly consequential to Plaintiff because the Website itself is a means by which consumers obtain information about Le Vian products and determine where those products may be purchased. Both products in which Plaintiff was interested direct consumers to Le Vian's retailer-location functionality rather than merely providing static information about the merchandise.

13. Plaintiff's inability to independently access the Website therefore impaired not only her ability to research and evaluate the particular merchandise she desired, but also her ability to use Defendant's online functionality to determine where Le Vian merchandise could be obtained from a physical retailer.

14. This action arises from Defendant's alleged failure to design, construct, maintain, and operate its Website so that its content and functionality are fully and equally accessible to

Plaintiff and other blind and visually impaired individuals who rely upon screen-reading technology.

15. The accessibility barriers encountered by Plaintiff include defects affecting the programmatic communication of Website content and controls to screen-reading software. As detailed more fully below, those barriers impair access to essential functions and information concerning Defendant's merchandise, including product information, images and their meaningful equivalents, links, controls, forms, navigation, and retailer-location functionality.

16. As a result of those barriers, Plaintiff was unable to independently obtain the full and equal benefit of the goods, services, information, privileges, advantages, and accommodations Defendant makes available through its Website and in connection with the physical retail establishments through which Le Vian merchandise is made available.

17. Defendant's failure to provide Plaintiff with full and equal access to its Website, www.levian.com, and the goods, services, information, privileges, advantages, and accommodations offered in connection therewith violates Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189, as well as the applicable provisions of New York State and New York City law alleged herein.

18. Plaintiff intends to return to Defendant's Website to research the Le Vian Earrings, Style No. U-TRFS 67, the Blue Sapphire Butterflies Scarf, Style No. XSCSM1030BBL, and other Le Vian merchandise, to obtain product and pricing information, to determine where desired Le Vian products may be purchased, and to purchase merchandise once Plaintiff can independently access the Website and its functionality using her screen-reading software.

## JURISDICTION AND VENUE

19. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

20. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related claims arising under New York law, including the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York Civil Rights Law §§ 40-c and 40-d ("NYCRL"), because those claims arise from the same nucleus of operative facts as Plaintiff's federal ADA claim.

21. Defendant, LE VIAN CORP., is a New York domestic business corporation with its principal executive office located at 235 Great Neck Road, Great Neck, New York 11021.

22. This Court has personal jurisdiction over Defendant because Defendant is incorporated under the laws of the State of New York and conducts business within New York. Defendant operates the commercial Website, www.levian.com, through which it presents and promotes Le Vian merchandise, provides consumers with information concerning its products, and offers functionality through which consumers may locate retailers where Le Vian merchandise is available.

23. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District. Section 1391(b)(2) permits venue in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred."

24. Plaintiff resides in Bronx County, New York, within the Southern District of New York. On September 1, 2026, September 15, 2026, and October 1, 2026, Plaintiff accessed and attempted to use Defendant's Website from within this District using her screen-reading software for the purpose of researching Le Vian merchandise, obtaining product information, and determining where the specific Le Vian merchandise she desired could be obtained.

25. During those visits, Plaintiff encountered the accessibility barriers alleged herein while physically located within this District. Plaintiff was thereby denied equal access within this District to the Website's product information, functionality, and services, including information and functionality concerning the Le Vian products Plaintiff desired and the retail locations through which Le Vian merchandise is made available.

26. Accordingly, venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiff's claims, including Plaintiff's attempts to access Defendant's Website and the alleged denial of equal access resulting therefrom, occurred within the Southern District of New York.

27. Courts have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See *Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.,* 585 U.S. ___ (2018); *Godfried v. Ford Motor Co.,* 2021 U.S. Dist. LEXIS 87012 (D. Me. May 6, 2021); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *Panarra v. HTC Corp.*, No. 6:20-cv-6991 (W.D.N.Y. Apr. 15,

2022). Thus, jurisdiction and venue are appropriate in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here.

**THE PARTIES**

28. Plaintiff, CHRISTINE THOMAS, is and was at all relevant times a resident of New York County, New York.

29. Plaintiff is legally blind and visually impaired and is an individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, and the applicable New York State and New York City disability laws. Plaintiff's visual impairment substantially limits the major life activity of seeing and substantially impairs her ability to visually perceive and independently interpret information presented through conventional visual interfaces.

30. Because of her visual disability, Plaintiff relies upon screen-reading software, including NonVisual Desktop Access ("NVDA"), to access and navigate websites, identify links and controls, read text and product information, obtain pricing and other information concerning merchandise, and otherwise interact with digital content independently. Plaintiff therefore requires websites to communicate visually presented information and interactive functionality in a manner that is compatible with screen-reading technology.

31. Defendant, LE VIAN CORP. ("Defendant" or "Le Vian"), is a New York corporation that operates the Le Vian brand and maintains its headquarters at 235 Great Neck Road, Great Neck, New York 11021. Defendant's official Website identifies this location as its headquarters.

32. Defendant owns, operates, and/or controls the Website located at www.levian.com

(the "Website"), through which Defendant presents Le Vian jewelry, accessories, and other merchandise to the public and provides consumers with information concerning its products and the locations at which Le Vian merchandise may be obtained.

33. The Website is an important component of Defendant's interaction with consumers. Through the Website, consumers can browse Le Vian merchandise, review information concerning particular products and collections, and access functionality intended to assist consumers in locating retailers offering Le Vian merchandise. Defendant's Website expressly provides consumers with a "Store Locator" for that purpose

34. Defendant's Website therefore serves as a digital gateway through which consumers obtain information concerning Le Vian merchandise and identify physical retail locations where such merchandise may be available. The Website's accessibility is particularly important to blind and visually impaired consumers who cannot obtain visually presented product and retailer information without assistive technology.

35. Defendant is responsible for providing Plaintiff and other individuals with disabilities full and equal access to the goods, services, information, privileges, advantages, and accommodations Defendant makes available through its Website and in connection with its products and services.

## NATURE OF ACTION

36. This action arises under Title III of the Americans with Disabilities Act**,** 42 U.S.C. § 12181 *et seq.,* challenging Defendant's operation of a public-facing commercial website that denies blind and visually impaired individuals full and equal access to its goods, services, and digital content. Plaintiff, a legally blind resident of this District, attempted to access Defendant's

website using screen-reading software but encountered multiple, programmatically detectable access barriers that prevented meaningful engagement with its products and services. Defendant's failure to design, construct, and maintain its website in accordance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA constitutes unlawful discrimination and violates federal accessibility standards.

37. For Plaintiff and other blind and visually impaired consumers, equal access to the Website is particularly important because information that sighted consumers can perceive visually must instead be communicated through assistive technology. When Website images, links, buttons, forms, headings, controls, and other interface elements are not properly coded or programmatically identified, screen-reading software may be unable to convey their content, purpose, state, or functionality effectively to the user.

38. Blind and visually impaired individuals commonly access websites using screen-reading software that converts programmatically available digital information into synthesized speech or other accessible output. Plaintiff utilizes NonVisual Desktop Access ("NVDA") for this purpose and depends upon NVDA to independently navigate websites, obtain product information, identify and activate controls and links, and interact with digital content.

39. Plaintiff CHRISTINE THOMAS is legally blind and visually impaired and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102, and applicable New York State and New York City law. Plaintiff's visual impairment substantially limits the major life activity of seeing and prevents her from independently perceiving and interpreting visually presented digital content without assistive technology.

40. Because of her disability, Plaintiff relies upon NVDA when accessing Defendant's

Website. To provide Plaintiff with meaningful and equal access, Website content and functionality must be coded in a manner that enables her screen-reading software to identify, interpret, and communicate the information and functionality otherwise presented visually to sighted users.

41. The World Wide Web Consortium ("W3C") has developed the Web Content Accessibility Guidelines ("WCAG"), which provide technical criteria for making web content accessible to individuals with disabilities. WCAG 2.1 Level AA provides a recognized technical framework against which accessibility barriers affecting persons who use assistive technologies can be identified and evaluated. Although Title III does not presently prescribe WCAG 2.1 Level AA as a codified regulatory standard applicable to private businesses, WCAG provides relevant technical criteria for evaluating whether web content and functionality are accessible to individuals with disabilities.

42. On September 1, 2026, September 15, 2026, and October 1, 2026, Plaintiff visited and attempted to use Defendant's Website, www.levian.com with NVDA for the purpose of researching Le Vian merchandise and obtaining information and functionality necessary to evaluate products she desired and determine where they could be obtained.

43. Among the products Plaintiff specifically desired were Le Vian Earrings featuring Grape Amethyst®, Chocolate Diamonds®, and Nude Diamonds™ set in 14K Strawberry Gold®, Style No. U-TRFS 67, and the Scarf - Blue Sapphire Butterflies, Style No. XSCSM1030BBL.

44. Plaintiff desired to independently obtain the information made available through Defendant's Website concerning these specific products, evaluate their respective features and pricing, and use the Website's retailer-location functionality to determine where the products could be obtained. Plaintiff's interest was not hypothetical or abstract; she visited Defendant's

Website on three separate occasions in furtherance of her interest in Defendant's merchandise.

45. During Plaintiff's visits, however, she encountered accessibility barriers that interfered with NVDA's ability to communicate Website content and functionality to her and prevented her from independently accessing the Website in a manner equivalent to that afforded to sighted consumers.

46. Website accessibility defects of the type encountered by Plaintiff can include, among other things:

a. Missing text equivalents for non-text elements;

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible Portable Document Format (PDF) files;

q. User interface elements whose roles, states, and values cannot be programmatically determined or conveyed to assistive technology.

47. Such barriers are not merely technical irregularities. When they affect product pages, navigation, controls, links, or retailer-location functionality, they interfere with Plaintiff's ability to independently identify and research merchandise, obtain information necessary to evaluate products, and determine where desired Le Vian merchandise may be obtained.

48. Defendant's alleged failure to provide accessible Website content and functionality denies Plaintiff the opportunity to independently access the goods, services, information, privileges, advantages, and accommodations Defendant makes available to sighted consumers through its Website.

49. Plaintiff desires and intends to return to Defendant's Website to research the Le Vian Earrings, Style No. U-TRFS 67, the Blue Sapphire Butterflies Scarf, Style No. XSCSM1030BBL, and other Le Vian merchandise, and to utilize the Website's product and retailer-location functionality once the accessibility barriers preventing her equal use of the Website have been removed.

## STATEMENT OF FACTS

50. Plaintiff CHRISTINE THOMAS is a legally blind consumer residing in Bronx County, New York. As documented by her treating optometrist, Dr. Christopher R. Scheno, O.D., Plaintiff sustained severe bilateral ocular trauma during childhood that caused complete and permanent loss of vision in her right eye and severely compromised residual vision in her left eye.

Her bilateral visual impairment is permanent, irreversible, and satisfies the applicable criteria for legal blindness. Because Plaintiff cannot reliably read standard print, visually interpret product photographs, or independently operate conventional visual interfaces, she relies on assistive technology, including screen-reading software, screen magnification, and keyboard-based navigation, to access digital content and shop online. (See Exhibit A.)

51. Plaintiff uses assistive technology to obtain the same information that sighted consumers acquire visually, including the identity and appearance of merchandise, product descriptions, materials, dimensions, colors, available variations, prices, promotional terms, and purchasing options. She also depends on properly labeled links, buttons, menus, and form controls to move between product collections, open individual product pages, select available options, and advance toward a purchase. When this information is not programmatically identified or the Website's interactive components are not properly coded, Plaintiff cannot independently determine what merchandise is being presented or complete the shopping tasks available to sighted consumers.

52. Plaintiff became interested in merchandise offered by Defendant, LE VIAN CORP., including a Le Vian scarf identified on Defendant's Website as Scarf XSCSM1030BBL and a pair of Le Vian 14K Strawberry Gold earrings featuring Chocolate Diamonds totaling approximately 3/8 carats. Plaintiff was interested in the scarf as a practical personal accessory that she could wear without needing to visually coordinate intricate sizing or fit requirements. She was also interested in the earrings as a potential holiday gift because they offered the distinctive Strawberry Gold and Chocolate Diamond combination associated with Le Vian merchandise. Defendant's Website was a particularly important source of information because Plaintiff could

not independently evaluate the products by visually inspecting their photographs or presentation.

53. Plaintiff was particularly interested in Le Vian merchandise because she was drawn to the distinctive combinations of gemstones, metals, and designs featured in the brand's jewelry, including the combination of Chocolate Diamonds® and 14K Strawberry Gold® used in the earrings she sought to evaluate. Plaintiff regarded those characteristics as materially different from the conventional diamond and gold jewelry she had encountered elsewhere and specifically wanted to explore Le Vian merchandise incorporating those features. Her interest therefore was not merely in purchasing earrings or jewelry generally, but in evaluating particular Le Vian designs and determining whether their combination of materials, appearance, style, and price suited her personal preferences and intended gift-giving needs.

54. On September 8, 2026, Plaintiff visited www.levian.com from her residence in Bronx County using assistive technology. She intended to locate the Scarf XSCSM1030BBL, determine its color, material, design, dimensions, price, availability, and purchasing options, and decide whether it would be suitable for her personal use. She attempted to navigate Defendant's product categories, identify the scarf among the merchandise presented, open its product-detail page, review the information provided there, and determine how the item could be purchased.

55. Plaintiff was unable to accomplish those tasks independently because the Website did not provide her assistive technology with reliable and meaningful access to the product information and controls presented visually on the scarf page. Images and image-based content were not consistently accompanied by meaningful text descriptions sufficient to identify and distinguish the merchandise. Links and interactive controls were announced without adequate names or context, and the page's structural and navigational defects interfered with Plaintiff's

ability to determine where the product description began, what information corresponded to the scarf, and which control would permit her to pursue the item. As a result, Plaintiff could not independently confirm the scarf's material, appearance, dimensions, price, availability, or method of purchase.

56. The lack of accessible product-image information substantially interfered with Plaintiff's ability to evaluate the scarf. Because Plaintiff could not visually inspect the product photographs, she relied on text alternatives and other accessible descriptive content to obtain information about the scarf's color, pattern, texture, shape, and overall design. The Website, however, failed to provide that information in a manner that Plaintiff's assistive technology could reliably detect, interpret, and communicate to her. Without access to the product information conveyed visually through the images, Plaintiff could not independently determine whether the scarf suited her preferences or make an informed purchasing decision without relying on a sighted person for assistance.

57. The lack of accessible product-image information was particularly consequential to Plaintiff's attempt to evaluate the scarf. Because she could not visually inspect its photographs, she depended on text alternatives and properly structured descriptive content to explain the product's color, pattern, texture, shape, and overall design. The Website did not provide that information in the form her assistive technology that could reliably identify and communicate. Plaintiff was therefore unable to determine whether the scarf matched her preferences or whether she could confidently select and purchase it without assistance from a sighted person.

58. Plaintiff returned to www.levian.com on September 21, 2026, intending to continue shopping and to evaluate the 14K Strawberry Gold earrings featuring Chocolate Diamonds

totaling approximately 3/8 carats. She sought to confirm the earrings' metal, gemstone composition, total carat weight, design, price, availability, and purchasing options so that she could determine whether they were appropriate as a holiday gift. She also attempted to ascertain whether the earrings were available directly through Defendant or through an authorized Le Vian retailer.

59. Plaintiff again encountered barriers at the precise interface points she needed to use to evaluate and pursue the earrings. The product images and image-based details were not meaningfully conveyed through her assistive technology, preventing her from understanding the earrings' shape, setting, arrangement of stones, and overall appearance. Certain links and controls lacked sufficiently descriptive accessible names, while deficiencies in the page's headings, labels, and structural organization made it difficult to determine which information related to the earrings and which controls would allow her to locate a retailer, obtain purchasing information, or continue toward a transaction. Consequently, Plaintiff could not independently compare the earrings with other Le Vian merchandise or determine whether they were suitable for her intended gift.

60. The inaccessible presentation of the earrings' visually communicated characteristics was material to Plaintiff's purchasing decision. The product's design, the arrangement of the Chocolate Diamonds, the appearance of the Strawberry Gold setting, and the earrings' overall style could be readily assessed by a sighted consumer viewing the product page. Plaintiff, however, was denied an equivalent means of obtaining that information. Without meaningful text alternatives and properly associated product information, she could not independently understand the characteristics that distinguished these earrings from other jewelry offered by Defendant.

61. On October 3, 2026, Plaintiff returned to Defendant's Website for a third time. She intended to determine whether the barriers encountered during her earlier visits had been corrected, resume her evaluation of the scarf and earrings, and review Defendant's Handbags and Accessories collection for additional personal accessories and potential holiday gifts. Plaintiff attempted to navigate the collection, identify the merchandise displayed within it, distinguish one product from another, open relevant product pages, compare the available items, and obtain the information necessary to decide which products she wished to pursue.

62. During this third visit, Plaintiff encountered the same types of barriers across Defendant's broader merchandise collection. Product tiles and images were not consistently identified by meaningful text alternatives; links and controls did not reliably communicate their destination or purpose; and deficiencies in the Website's headings, labels, and page structure interfered with her ability to move logically through the collection. As Plaintiff navigated by keyboard, her assistive technology frequently provided insufficient information to identify which merchandise had received focus, whether a product page had been opened, or what action an interactive component would perform. These barriers prevented her from efficiently browsing the collection, comparing merchandise, and returning to the products she had previously attempted to evaluate.

63. The barriers Plaintiff encountered were located at the core points of Defendant's online shopping experience. To shop independently, Plaintiff needed to identify product categories, distinguish among product tiles, open the correct product pages, understand the products' characteristics, confirm their prices and availability, and activate the controls necessary to obtain or purchase them. The Website's inaccessible images, inadequately identified links and

controls, deficient labels, and structural coding failures interrupted that sequence and prevented Plaintiff from progressing from product discovery to an informed purchasing decision.

64. Plaintiff could not cure these barriers merely by continuing to navigate or repeatedly activating unidentified controls. Doing so created a substantial risk that she would open the wrong product, misunderstand the merchandise being presented, lose her position on the page, or initiate an unintended action. Nor would assistance from a sighted person provide an equal shopping experience. Requiring Plaintiff to disclose her shopping interests, rely on another person's description of the merchandise, or surrender control over the transaction would deprive her of the privacy, independence, convenience, and autonomy afforded to sighted consumers using the same Website.

65. Independent WAVE evaluations of representative portions of Defendant's Website corroborate Plaintiff's experiences. The evaluation of the Scarf XSCSM1030BBL page identified 44 accessibility errors, and the evaluation of the 14K Strawberry Gold earrings product page identified 42 accessibility errors. A separate evaluation of Defendant's Handbags and Accessories collection identified 127 accessibility errors. These findings corroborate the existence of extensive accessibility defects on the specific product and collection pages Plaintiff sought to use. (See Exhibit B)

66. The presence of substantial accessibility errors on both individual product pages and the broader Handbags and Accessories collection demonstrates that the problems Plaintiff encountered were not confined to a single product or an isolated malfunction. The defects appeared across separate components of Defendant's shopping platform, including collection-level content, product imagery, navigation, page structure, and interactive features. Their recurrence across the

Website prevented Plaintiff from avoiding the barriers by selecting another product page or using a different route through the Website.

67. These barriers directly affected Plaintiff's access to the particular products she wanted. On the scarf page, the defects prevented her from independently identifying and evaluating the scarf's material, color, design, dimensions, price, availability, and purchasing method. On the earrings page, the defects prevented her from understanding the product's design, setting, gemstone arrangement, price, availability, and suitability as a gift. Within the Handbags and Accessories collection, the defects prevented her from identifying and comparing additional products or reliably navigating back to the merchandise in which she had already developed an interest.

68. Plaintiff did not visit Defendant's Website merely to test its accessibility or browse without a commercial purpose. She visited on three separate dates to research specific Le Vian merchandise, compare the available offerings, and pursue products for her personal use and as holiday gifts. She selected Defendant because its Website presents Le Vian's branded merchandise, collections, product designs, and identifying information in a centralized location and represents a direct means of learning about the products and determining how they may be obtained.

69. As a direct result of the barriers described above, Plaintiff was unable to independently acquire the product information necessary to make an informed purchasing decision and was unable to complete the shopping activities she undertook on September 8, September 21, and October 3, 2026. She left the Website without purchasing or otherwise obtaining the scarf, the earrings, or any additional merchandise from the Handbags and Accessories collection. Her

inability to do so was caused by the Website's failure to communicate essential product information and interactive functionality in a manner compatible with the assistive technology she requires.

70. Plaintiff thereby suffered a concrete and particularized injury through the denial of full and equal access to Defendant's merchandise and online services. Sighted consumers could visually identify the products, examine their characteristics, compare available merchandise, and interact with the Website's controls. Plaintiff was denied those same opportunities because of her disability and was unable to independently complete the specific shopping activities that motivated her visits.

71. Plaintiff remains particularly interested in Le Vian merchandise for the same reasons that initially brought her to the Website. In particular, Plaintiff remains interested in the Scarf XSCSM1030BBL and the 14K Strawberry Gold earrings featuring Chocolate Diamonds, and desires to explore additional Le Vian jewelry and accessories, including other designs incorporating the distinctive gemstone and metal combinations that attracted her to the brand. Plaintiff desires to return to the Website to independently evaluate those products, compare available Le Vian designs and prices, determine where desired products may be obtained, and purchase merchandise that satisfies her personal preferences and gift-giving needs. Because the accessibility barriers she encountered prevented her from independently completing those shopping activities during her prior visits, Plaintiff intends to return to the Website once those barriers are removed so that she can resume evaluating the Le Vian merchandise in which she continues to have a genuine interest.

72. Plaintiff is presently deterred from returning because the barriers remained present

across three separate visits and affected both of the specific product pages she sought to use, as well as the broader collection through which she attempted to locate additional merchandise. Her deterrence is not based upon a generalized concern that Defendant's Website may be inaccessible. It is based upon her repeated personal encounters with barriers that prevented her from accessing specific identified products and carrying out specific shopping tasks.

73. Plaintiff will return when Defendant makes the Website reliably accessible to consumers who use assistive technology. In particular, she intends to return when product images and characteristics are meaningfully described, product information is presented through a logical and accessible structure, links and controls reliably communicate their identity and purpose, and the Website permits her to navigate from product discovery through the purchasing process without assistance from a sighted person.

74. Unless Defendant is required to remediate and maintain the Website in an accessible condition, Plaintiff will continue to be denied independent access to the products she seeks and will face a real and immediate risk of encountering the same barriers upon her next visit. Her injury is directly traceable to Defendant's design, operation, and maintenance of the Website and is redressable through injunctive relief requiring Defendant to provide and maintain accessible product information, navigation, interactive controls, and purchasing functionality.

## CLASS ACTION ALLEGATIONS

75. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2), defined as: All legally blind individuals residing in the State of New York who have attempted to access www.levian.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

76. Common questions of law and fact exist among the Class and Subclass, including but not limited to:

- Whether www.levian.com qualifies as a "public accommodation" under Title III of the ADA;
- Whether Defendant's Website constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to LE VIAN 's information, services, and digital content;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace;
- Whether Defendant failed to adopt and implement accessibility policies consistent with **WCAG 2.1 Level AA**;
- Whether injunctive relief is warranted to remedy Defendant's ongoing violations.

77. Plaintiff's claims are **typical** of the claims of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—missing alternative text, inaccessible buttons, unlabeled form fields, broken ARIA references, improper heading structure, and mouse-dependent controls—that affect all Class members attempting to use Defendant's Website.

78. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has

no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

79. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

80. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

81. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.ancestry.comand faced exclusion.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

82. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
>
> 42 U.S.C. § 12182(a).

84. Defendant's Website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

85. No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

86. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

87. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege,

advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

88. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

89. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
## (New York State Human Rights Law)
## ("NYSHRL")

90. Plaintiff, CHRISTINE THOMAS on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

91. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

92. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a

substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

93. Defendant LE VIAN CORP., at all relevant times, owned and operated a place of public accommodation—the subject website, www.levian.com — and also owned, operated, and maintained brick-and-mortar retail outlets, including multiple retail locations in New York City and elsewhere in New York State, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

94. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

95. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

96. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

97. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in

order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

98. The Defendant’s discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden.” Article 15 of N.Y. Exec. Law § 296(2)(c).

99. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as “W3C,” has published version 2.1 of the Web Content Accessibility Guidelines (“WCAG 2.1”). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

100. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

101. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

102. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

103. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

104. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

105. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

106. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

107. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

108. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

109. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

110. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

111. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id..*.

112. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

113. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

114. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

115. Defendant is subject to NYCHRL because it owns and operates the Website, www.levian.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

116. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

117. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the

disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

118. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

119. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

120. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

121. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

122. Plaintiff is also entitled to compensatory damages, as well as civil penalties and

fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

123. Plaintiff is also entitled to reasonable attorneys' fees and costs.

124. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

125. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

126. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

127. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.,

N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
October 27, 2026

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com